May it please the Court, my name is Samuel Mina. I'm appearing on behalf of Petitioner Mandeep Singh. I'd request that I set aside two minutes of my time for rebuttal. That's fine, but the clock will reflect your total time, so you'll have to help keep track of it. Thank you. Singh had applied for asylum and was denied by the immigration judge on credibility grounds. He then appealed in that case. The appeal was also denied. The board finding that the I.J. had not made a clearly erroneous decision. The I.J. denied on credibility finding that Singh had testified to facts that were not in his declaration. That he had failed to provide a medical report. The I.J. also felt that Singh had failed to provide corroboration of details regarding a police arrest. And he characterized Singh's involvement in politics as being disinterested. With respect to the omission of Singh's declaration. Let me ask you a question before you get to that. As I understand it, the real I.D. Act does apply here. That's correct. So, given that the I.D. Act does apply here, what's my standard of review here? That is still the, you have to find compelling evidence that the two will return. But I don't believe that in this case that's the fact. But it doesn't need to go to the heart of the issue anymore, correct? That is correct. It can be, frankly, any inconsistency that the I.J. finds reasonable is how this Court has actually phrased it. So, in this particular matter, what are we really looking at? What is the standard? The standard has not changed. Still substantial evidence? Yes. And we're still looking then at substantial evidence to support the I.J.'s adverse credibility determination? Correct. All right. You generally laid out what the I.J. said. Why isn't that substantial evidence? I think when we look at the specifics of the case, it is not substantial. As I said, there was an instance that the I.J. pointed to was seeing left-out information in the declaration and then testified to that. He did not try to, he was not evasive when it came to it. He testified he had read the application, or in fact it was read back to him, and he believed it was an omission from whoever had typed or prepared the application. But in effect, it was my understanding that the I.J. suggested that he was pretty straightforward about his father getting brutal treatment, and yet he left out that he got the same. That's correct. And he felt that was pretty big inconsistency. The I.J. felt that, yes. And then add to that, what's the next? Well, as the I.J. pointed out, there were several. He pointed out that he believed that Singh could have provided a medical report, and there was no medical report in the file. Singh did, however, provide an affidavit from his mother. He first testified that the doctor who treated him had done so on the condition that he not be named, and he would not give any information regarding that out of fear of reprisal from the Indian authorities. Singh did then provide an affidavit from his mother that essentially asserted the same facts, that the doctor that they had used had indicated he would not be providing any information with respect to the treatment that he had provided. Well, you'd agree with me, I guess, that when, in fact, you believe that somebody is giving you incredible information, our rule would suggest, well, you better confront him first, and he was confronted, and then you give him some chance to bring forth some credible evidence. Correct. And they gave them that, and all he got was his mother's affidavit. That's correct. But as I said, he did testify as to the reasons why he could not provide an affidavit or a medical report from the doctor, and his mother in her affidavit attested to the same facts. Okay. What about his father? As I understand, he testified about what his father had had to happen to him, and the IJ said, get us some corroboration. And then there was no newspaper came forth about his father or a documentation of what had happened or anything like that. That's correct. The IJ had asked for news reports or information from the father's party. There were no news reports forthcoming. He was unable to provide any or, in fact, to obtain any. And with respect to his father's party, he did testify that he was not he did not know people in the party, was not able to get documentation from the party. Well, he wasn't didn't he testify that he was giving speeches to students? The father or Singh himself? I thought. Singh. Singh. Singh testified that he was handing out and distributing pamphlets. He testified that he had appeared at certain activities. He listened to a speech from his brother-in-law. He did testify that he himself was a student, so he was busy with his studies. So it's the brother that was giving the speech. It was the brother-in-law, actually, and I believe that was part of the IJ's. Oh, he was just distributing pamphlets? He distributed pamphlets, essentially. And wasn't it also that there's kind of a mix-up about whether he was really in the party or whether he was just a supporter of the party, and so he was supposed to get something to document that? He testified that he was never a member. He testified there was a line of questioning with respect to whether he had joined the party. I believe it was when did you first join with them, and I believe there may have been confusion. He testified consistently that he never officially joined. He was never a member. He testified that he supported them, and I believe perhaps the word join may have been confusing in the sense that association or joining with them. Well, what I was getting at was the lack of knowledge of Indian politics. If I recall, he didn't know who the prime minister was. He didn't seem to know what was going on, and that was part of the basis for the lack of credibility, and I'm just wondering how you address that. Well, I believe it's addressed, as I said earlier, that you're correct. The judge did describe him, in fact, as being disinterested. He referred to his disinterest in politics. And seeing himself testify that he was – I think a reading of the record shows he was not particularly active. Well, but you wonder – I mean, we've all been students. When you get out there and you hand out pamphlets and your brother is making a speech, you would expect that the student would know a little bit about what he was protesting and whom. One could argue that. Singh did testify that – he gave some details about one of the individuals, one of the martyrs that he was passing information about, and he also testified that he did not actually read the information he was giving. It appears to me that he was – as a judge, the I.J. characterized him not particularly the most active individual, but I believe the I.J. was expecting that he was, in fact, a very strong activist. It doesn't appear from the record that he was. So that doesn't really help his fear of future persecution either, I suppose. Well, I think with respect to imputed opinion, it can. I think the problem here is that the I.J., as I said, thought that he was presenting a case where he himself was a very strong advocate and activist. It appears more that it was his father who was, much more so than Singh himself. Okay. But the record does indicate, as I understood his testimony, reading it very carefully, that he joined the students in April. Then his testimony was he never joined the students. He was only a supporter. And then his testimony is he joined again in November 14th of 2003. I don't have the record right in front of me, and I'm somewhat familiar with what the court is referring to. Again, as I said, I think given the way testimony goes in asylum hearings, the word join, the word associate, the word support member, when you – he was asked when did you join, I think that can be explained as when he was first involved with them, not necessarily become a member. Because at one point the I.J. asked specifically were you a member or not, and he testified he was not a member. He was never a member. Was there a – was this – was a translator used in – There was a translator. Okay. You have about a minute left. Thank you. Thank you. Good morning, Your Honors. May it please the Court, and I rise this morning on behalf of the Attorney General. As the Court noted, this is a real I.D. credibility case, and the standard of review is to look at the totality of the circumstances of the record and decide whether it should be upheld and whether it's a compelling conclusion. Here the government argues that the evidence in the record should be upheld and does not compel a contrary conclusion to the I.J. Singh failed to carry his burden of proof through credible evidence, and the agency provided several reasons, as the Court noted, for the credibility finding, the first being the major inconsistency between Singh's testimony and his written statement concerning whether he was beaten during the first arrest. I'd like to point the Court's attention to the testimony he gave where he says, in the record 98-99, at that time there were no injuries because they did not beat me because I was too young. And then counsel asked, well, they slapped you and they beat you with batons. Is that right? And he says, yes, sir, they did. Even internally within his testimony, he was inconsistent. His written statement did not even include any information that he was physically beaten. Instead, he described how his father was thrashed with sticks and leather belts during his six-day detention. The second point that the I.J. used to support the credibility was the lack of corroborative evidence. He provided Singh with eight months to collect this evidence, requesting specifically what he needed. Counsel pointed out that his mother provided an affidavit. However, the affidavit didn't contain much information, and the I.J. specifically asked. He wanted to know who, what, when, why the police had visited, and also what particular reasons the police came for, what organization they came from, how many came, and why they came. Finally, the I.J. pointed out that Singh did not have knowledge of politics in India, noting that he never joined his father's party. He never registered to vote. He didn't know the prime minister's name, and he didn't even know the martyrs' names of pamphlets that he was passing out during a demonstration. Are there any questions from the panel? Well, adverse credibility determination is not necessarily a death knell to cat protection, is it? Well, where the applicant's cat protection claims are based on the same evidence or same statements, then the credibility can uphold the refusal of cat protection. Supposing that we suggest that adverse credibility is not necessarily the death knell, is there anything else in there that we can look at on cat in the record? Yes, Your Honor. Singh never described any torture. If you even want to take into account... What is it that Singh has to prove for cat? I'm sorry? What is it that Singh must prove for cat determination? That the government is acquiescing or that they are themselves torturing him. In other words, that it's more than likely not that he will be tortured if he returns. Yes, it's a higher standard than asylum. Do we have anything in the reports alone from the government which would compel a conclusion that he would not be tortured? Like the background evidence? Yes. I actually don't have that information before me. But I mean, I would argue that he, and apparently today has confirmed that he wasn't a member of the party. There is in the record when he was cross-examined other evidence, too. As I understood it, he said that the chief of the military and other cabinet officers now were Sikh members, as I understood it. Yes, basically that they were of his same political siding, that he's also a Sikh and that now they hold higher positions in the government. Well, I guess that's my worry is that in a general case, just because I find somebody adversely or not credible, that doesn't necessarily mean that I can't find cat protection. So I'm really looking for the grounds to find that he shouldn't get the cat protection. Well, I would argue that he didn't, first of all, point to any torture or that he had fear of torture when he returned. I mean, the corroborative evidence that he claims to be presenting from his mother didn't give any specifics of what was happening back in India to confirm that he would be tortured. And as you pointed out, the government is now Sikh, which is what he was arguing that the political support that he was trying to. Let me see if I understand. Judge Smith is indicating to establish his torture claim, he doesn't have to prove that he was persecuted in the past. No. He has to prove that he fears for the future. Right. Are you suggesting that the record shows that there's less basis to conclude that a Sikh will be tortured now than there was when he left India? That's my first point. And the second point is that he doesn't even, he couldn't even meet the lower well-founded fear based on the record evidence that he would be persecuted at all or tortured when he returned. There was no indication from his mother specifically what the police were after, what they were coming for. And so I would stand on that. But he doesn't have to show that they were coming for his. Right. I understand that the torture is that the government would be after Sikhs and that here now that the government is made up of many high level officials of Sikhs that it's less likely that he will be targeted. I have no other questions. Okay. In closing, the government just requests that the agency decision be upheld. I thank you for your time today. Thank you. You have about a minute if you wish to add anything. I would just follow up on the court's most recent point. The court is right. Singh does not have to show that there's any political nexus or that he's been persecuted in the past in order to be granted. Yeah, but he has to show something. He does. And he did, in fact, provide an affidavit from his mother that indicated that the police raided the house and were looking for him. At page 193 of the record, the 2005 country report, the 2003 reports indicate that Manmohan Singh, a Sikh, was in fact prime minister. So at the time that this case was heard, there was a Sikh prime minister. The reports also indicate at the very same time there were extrajudicial killings, there were poor prison conditions, there was rampant corruption and torture within the Indian authorities. So I do believe that the court can find that Singh would qualify for CAT relief irrespective of whether he is found credible or not just based on country conditions alone. Well, but they do. He has some responsibility, doesn't he, to show that these reports are applicable to him? I believe the country reports are general reports throughout the country. They do indicate that throughout the Indian country these conditions are prevailing. Well, but if that is true, then we have to grant CAT relief for every Sikh. I'm sorry? If you're correct in that, then we have to grant CAT relief for every Sikh. I believe for this particular Sikh you would have to, yes. Okay. Thank you. Well, I guess your time's up. But my worry is I was trying to get you to apply it to your particular Sikh so that it would make some difference in this particular case. Your Sikh is different from all other Sikhs. Thank you. Thank you. The case just argued is submitted for decision.
judges: Moody, Schroeder, Smith N. R.